**UNITED STATES DISTRICT COURT**
**EASTER DISTRICT OF ARKANSAS**
<u>**CENTRAL DIVISION**</u>



**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 0 7 2020

**JAMES W. McCORMACK, CLERK**
By:_____
                     **DEP CLERK**

<u>**LOLA SILAS**</u>

    **PLAINTIFF**

CIVIL ACTION NO. *4:20-cv-1426-BSM*

<u>**WALGREENS**</u>

    **DEFENDANT(S)**

This case assigned to District Judge _Miller_
and to Magistrate Judge _Deere_

<u>**COMPLAINT UNDER AGE DISCRIMINATIO IN EMPLOYMENT ACT OF 1967**</u>

1.     This action is brought pursuant to the central provision of the ADEA 29 U.S.C. § 623, (a), (1) for the Prohibition of Age Discrimination.  Jurisdiction is specifically conferred on the Court by 42 U.S.C. §2000E-5(f).

2.     Plaintiff, Lola Silas, is a citizen of the United States and resides at 3474 E. Kiehl Ave., Apt. 7412, Sherwood, Arkansas, 72120, Pulaski County, telephone, 501-992-8441.or

3.     Defendant, Walgreens, resides at, or its business is located at 2500 N. McCain Blvd, North Little Rock, Arkansas, 72116, Pulaski County.

4.     Plaintiff sought employment from the defendant or was employed by the defendant at 9200 No. Rodney Parham Rd., Little Rock, Arkansas, 72227, Pulaski County.

5.     Defendant discriminated against plaintiff in the manner indicated in paragraphs 9 and 10 of the complaint on or about April 11th 2020.

6.     Plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission charging defendant with the acts of discrimination indicated in paragraphs 9 and 10 of this complaint on or about <u>September 15th 2020</u>.

7.     The Equal Employment Opportunity Commission issued a Notice of Right to Sue, which was received by Plaintiff on <u>September 22nd 2020</u>, a copy of which notice is attached to this complaint.

8.      Because of plaintiff Age, defendant failed to promote plaintiff.

9.      The circumstances under which the defendant discriminated against plaintiff were as follows:
On or about March 8th 2020, Jennifer a shift leader had an altercation with plaintiff in the duties that was
required to perform; plaintiff became disturb of the inappropriate behavior of Jennifer and tried calling
Pipkin on numerous occasions.  Plaintiff was not aware of Pipkin calling the store and was told by
Jennifer that she was informed by Pipkin that she could go home for the day.  On March 11th 2020,
plaintiff noticed significant change in her full-time hours, which lasted for over a month.  Plaintiff had
reached out to Pipkin about Designated Hitter position in pharmacy sometimes during the month of
March as well as having the need to transferring to another store.  Pipkin on informed Silas that taking the
Certification test was very hard and that it was very hard for him.  Plaintiff did in fact had a general
conversation about her age during her last birthday being of the age sixty before March 8th 2020.  The
conversation from Pipkin after knowing plaintiff age, he shared with plaintiff that when he took the
certification course, it was difficult. Plaintiff was well qualified for the position with over 25 years of
customer service experience and an associate degree.  On or about April 28th 2020 plaintiff learned that
Pipkin had promoted two young ladies under the age 40 who had not been employed for no more than
sixty days.  [1]ADEA 29 § 623, (a)(2) prohibits employer practices unlawful for depriving an individual of
employment opportunities or otherwise adversely affect his/her status as an employee because of such
individual age

10.     The acts set forth in paragraph 9 of this complaint may still be being committed by defendant.

11.     Plaintiff attaches to this complaint a copy of the charges filed with the Equal Employment
Opportunity Commission which charges are submitted as a brief state of the facts supporting this
complaint.

12.     See exhibits one, two and three.

13.     **WHEREFORE,** plaintiff prays that the Court grant the following relief to the plaintiff:
(a) Defendant be directed to compensate upon resignation and that the Court grant such relief as may be
appropriate, including injunctive orders, damages, costs and attorney's fees.

---

[1] Massarsky v. General Motors 27 Corp., 706 F.2d 111, 116-17 (3d Cir. 1983), The Court in Massarsky held that the
delineation between "mixed motive" and "pretext cases" also known as a delineation between "direct" and
"indirect" evidence of discrimination that had been developed under Title VII, was also applicable to ADEA claims.
See also Miller 33 v. Cigna Corp., 47 F.3d 586 (3d Cir. 1995) (en banc) (confirming that the "motive" "pretext"
dichotomy found in Title VII disparate treatment cases is also applicable in ADEA disparate treatment cases).

_____
Signature of Plaintiff

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Lola B. Silas<br>3474 E. Kiehl Ave<br>Apt. 7412<br>Sherwood, AR 72120 | From: **Little Rock Area Office**<br>**820 Louisiana**<br>**Suite 200**<br>**Little Rock, AR 72201** |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative<br>**Chris E. Stafford,**<br>**Investigator** | Telephone No. |
|---|---|---|
| **493-2020-01959** | | **(501) 324-5812** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

| | |
|---|---|
| *(signature)* | 9-22-2020 |
| **William A. Cash, Jr.,**<br>**Area Office Director** | *(Date Mailed)* |

Enclosures(s)

cc:    **Kim Metrik**
       **Director and Managing Counsel**

       **104 Wilmot Road, MS# 1456**
       **Deerfield, IL 60015**

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.**  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# **EXHIBITS**

# EXHIBT 1

## LETTER OF GRIEVANCE

Lola Baria Silas

Sherwood, AR

72120

501-992-8441


June 16, 2020


Walgreens Company


To Whom It May Concern:


I am raising a letter of grievance for less favourable treatment.  It is my reasonable and genuine belief that I have been subjected to less favourable treatment in comparison to Aaliyah Gulley and Jalisa Monroe.  I believe this less favourable treatment is because of my age.  My employer is actually aware that I would perhaps suffer monitory damages within the crisis of the COVID-19 and being that unemployment rate is high would create anxiety, which such impairments have had  a substantial adverse effect on my day to day activities, and furthermore,  which impacts upon my cognitive abilities , thought processes and memory function.  I now speak rationally about my less favourable treatment that occurred over that last three months.   Since, May 2020, having a difference with a shift leader who had ignored the store manager's protocol on each employee's responsibilities this day and falsifying a comment that I (Lola) had not made; this manner of the shift leader created an unfavourable character of me with unfavourable treatments by Bryan Pipkin (store manager).

On 5-11-2020, I reached out to the store manager, Bryan Pipkin by text about my hours being cut short when it was an understanding that I transferred over from Rodney Parham in Little Rock, Arkansas as a full-time cashier, it was cleared by Bryan Pipkin that I would be full-time.  Since this occurrence with a shift leader; This applies a discriminatory effect.  Due to my anxiety, which effected my cognitive ability to calmly speak clearly of my issue compared to my cognitive ability to rationalize calmly of my issue now.  My employer (managers') should have articulated this fact.  Thus, it is my position that my employer has discriminated against me, and furthermore, continuing to discriminate against me by treating me less favourably by reducing my hours at work and promoting two young ladies who had just got hired in and had less seniority of time spent with the company.  In fact, Bryan Pipkin knew of my goals and desires of excelling as a designated hitter or shift lead position, he also knew of my age.

On May 2, 2020, throughout my anxiety of less favourable treatment, Kenard Pergram, (District Store Manager) meet with me regarding my complaint and issues of obtaining a transfer.  I was brought to my

attention that I could not be promoted or transfer due to the write-up he had just learned from his investigation.  This depression news caused great anger and frustrations with even more less favourable treatment since I am aware of some issues of occurrences transpired at the locality from which I transferred from.   On or about September 2019, Alexander Reyes had his brother enter into Walgreen store under false perception to be Alexander and was able to clock-in under Alexander's timecard when he was not present and yet he was able to receive a promotion as a designator hitter before me and yet I had nothing on my record at the time and at work on time every day, it is my reasonable and genuine belief that I had been subjected to less favourable treatment in comparison to Alexander Reyes.

On or about October 2019, I had spoken with Marsell (Store Manager Assistant) about goals I would like to pursue as a designator hitter or shift lead; for a second time I had been treated less favourably with the hiring of another shift lead, perhaps less experience and in fact younger, I have observed Marsell having to drive and pick up this shift lead because he did not come to work, to see this was a burdensome to experience such treatment when in fact I did my job and beyond that offered exceptional customer service.  Again, it is my position that my employer had discriminated against me, and furthermore, discriminate against me less favourably.  It is my reasonable and genuine belief that I have been subjected to less favourable treatment at both stores.

To this end, I require the knowledge of the following:

- How do you say, reducing my hours does not amount to unfavourable treatment?
- I require to know how you say reducing my time, which reflect my pay does not apply to discriminatory effect?
- How do you say, promoting someone with less experience, younger and who had committed a wrong with intention still be promoted does not apply to a discriminatory effect?
- I require to know how procedures are carried out with coaching and what grounds or effects that would require procedural steps taken?
- What steps are the Company going to take to remedy the situations?

Respectfully Submitted,

Lola Baria Silas/lbs

501-992-8441

# EXHIBIT 2

ADVERSE ACTIONS

WRITE-UPS

# Discipline for Misconduct: WW / FWW

 **REVIEWER**
CHELC CONGER (Manager)

## LOLA SILAS

Customer Service Associate
Position

4080240
User ID

CHELC CONGER
Manager

Walgreen Drug Store - 10352
Division

# Overview

## Task Instructions

Important: Employees should be disciplined in a fair and consistent manner for similar violations of policy or procedures
For Discipline Policy,

## Basis for Discipline 3

### Directions

Important: Employees must be disciplined in a fair and consistent manner for similar violations of policy or procedures
For Discipline Policy, click here

To search for examples, templates, and guides in the Employee Relations website, click here

Select a discipline level. Print a copy of the discipline for use as a reference during the conversation with the employee. Then click: "Save and Continue" and meet with the employee to deliver the discipline. The employee will be able to print this record from the acknowledgment section.

### Additional Information

| | |
|---|---|
| Basis for Current Conduct-related Discipline | Unprofessional Conduct |
| Consequences if performance standards are not met: | Further Discipline up to and Including Termination |

### Related Disciplinary History:

#### Comments

**CHELC CONGER (Manager):**
On 7/8 Lola was coached on her unprofessional behavior when speaking to other team members.

*never spoke un professional, heard all she said she would do — I explained I am too emotional and needs days off because*

### Explanation for Current Discipline:

#### Comments

**CHELC CONGER (Manager):**
On 11/24 Lola left work early after receiving a write up. She then called and used unprofessional behavior when she was speaking with me.

*she's picking (harassing me) and I didn't want to take my emotions out on customer*

*She said I will be written up for short notice to call off for several days — I said fine and then I have something on you, good bye*

### Discipline Level:

*hung up on speaker without informing me*

| Reviewer | Rating Scale |
|---|---|
| **CHELC CONGER (Manager)** | Final Written Warning |

#### Comments

**CHELC CONGER (Manager):**
This serves as a final written warning for this behavior, if it continues it will result in termination.

Chele came and informed me that she had a DH position avail — Informed her that I wasn't be here too long — then she informed Jods who was nearby that a position was avail and would she be interested —

I was called into office around 3:15 for a final write up from 7/8 and 11/24 when I left early for being emotionally upset for being written up for informing a customer about face covering and I phoned her that I will not be in for the next few day/s because I was emotionally upset and didn't what to show my anger ___ I informed her that because I feel harassed and that while she had me on speaker is like recording me and I heard what she said that I can be written up for not coming in and up to termination — She stated that she doesn't want to fire me, because I'm good with customers but then not professional Claiming I hung up on her and I didn't let her finish. I said good bye when she told me she could write me up or terminate me.

yes I defended myself of stating I'm unprofessional when I'm not — the abuse keeps going here

# Discipline for Misconduct: WW / FWW

 **REVIEWER**
CHELC CONGER (Manager)

## LOLA SILAS

**Customer Service Associate**
Position

**4080240**
User ID

CHELC CONGER
Manager

Walgreen Drug Store - 10352
Division

## Overview

### Task Instructions

Important: Employees should be disciplined in a fair and consistent manner for similar violations of policy or procedures
For Discipline Policy,

*NOV, 25, 2020*

## Basis for Discipline 3

### Directions

Important: Employees must be disciplined in a fair and consistent manner for similar violations of policy or procedures
For Discipline Policy,

To search for examples, templates, and guides in the Employee Relations website,

Select a discipline level. Print a copy of the discipline for use as a reference during the conversation with the employee. Then click: "Save and Continue" and meet with the employee to deliver the discipline. The employee will be able to print this record from the acknowledgment section.

*never directly asked — read
script given by District Mgr as I
passed customer, never did I stop
and speak to customer...*

### Additional Information

| | |
|---|---|
| Basis for Current Conduct-related Discipline | Violation of Company Policy/Practice |
| Consequences if performance standards are not met: | Further Discipline up to and Including Termination |

## Related Disciplinary History:

### Comments

**CHELC CONGER (Manager):**
Lola has been told several times by myself and other area leadership that it is not appropriate for her to directly ask customers to wear a face mask. Walgreens policy states that only leadership may ask customers to wear a mask if they feel comfortable doing so.

## Explanation for Current Discipline:

### Comments

**CHELC CONGER (Manager):**
On or about 11/13 two customers came in to the store not wearing masks. Lola approached the customers and asked them to put face masks on according to the cdc guidelines. When I tried to coach Lola about not asking customers directly to wear face masks she stated that she was going to continue to do it anyways and that I should just write her up.

## Discipline Level:

| Reviewer | Rating Scale |
|---|---|
| **CHELC CONGER** (Manager) | Written Warning |

### Comments

**CHELC CONGER** (Manager):
If Lola continues to ask customers to wear face masks directly it can result in further discipline up to and including termination.

11-23-2020
Chelc informed me that many/
employees states I'm mean...
She also stated that the last young
lady quit on my account... She
also brought to my attention that a
new employee Priston, but not him, but
someone else told her that I hollered at
Priston, but Priston denies...

▷ when I left I call Chelc around 3pm
to inform her that I will not be in
Wednesday nor Thursday and that I will
see her monday/...

▷ She said that I would be written up for
not showing up for work and will not be
paid for the holiday/...

# EXHIBIT 3

HANDBOOK ON FACE COVERING AND PERMISSION TO READ SCRIPT
WHEN EMPLOYEES AND CUSTOMER ENTER BUILDING WITHOUT FACE
COVERING DURING THIS PANDEMIC, CORONA VIRUS (COVID-19

SEE EMAIL FROM REGIONAL VICE PRESIDENT

From:  Stover, Lynn (lynn.stover@walgreens.com)

To:  lbariaemail3@yahoo.com

Date:  Thursday, October 29, 2020, 01:17 PM CDT

Thank you so much for reaching out. We do have guidelines in place to keep all our employees safe. Brian Stallworth, your Director of Pharmacy and Retail Operations, will be at your store next Tuesday and would be happy to discuss with you.

**Lynn Stover, RPh, MBA**
**Regional Vice President**

**Midwest Region**

**Walgreen Co.** │ 3795 Corporate Center Drive │ Earth City, MO 63045
Telephone  314 739 4503 │ Mobile  316 393 7916

**Member of Walgreens Boots Alliance**

This email message, including attachments, may contain information that is proprietary, confidential, privileged and/or exempt from disclosure. Please hold it in confidence to protect privilege and confidentiality. If you are not the intended recipient, then please notify the sender and delete this message. Any viewing, copying,



# Face Cover
# Playbook

**November 2020**

# Table of Contents

Playbook Overview..................................................................................................................2

Walgreens Company Policy....................................................................................................2

Executive Orders for Face Covers.........................................................................................2

Face Cover Requirements for Team Members........................................................................3

   Requirements, Dress Code and Resources .........................................................................3

   Team Member Face Cover Accommodations .......................................................................4

   Team Member Provided Face Cover Distribution and Supply...............................................6

Face Cover Requirements for Customers ...............................................................................7

   Overhead Paging System Messaging ..................................................................................7

   Required Signage................................................................................................................8

   Customer FAQ and Talking Points .......................................................................................8

Face Cover Requirements for Vendors.................................................................................12

## Playbook Overview

This playbook was designed as a point of reference for store leaders to help answer questions around Walgreens guidance on face covers. It should act as a source of truth for all face cover related questions. Content includes information on requirements for team members, customers and vendors, as well as face cover accommodations for team members. This playbook should be utilized as a first point of reference for store leaders before contacting their district manager or Ask the Retail Hub. Content will continue to be updated as soon as possible to reflect the most updated guidance.

## Walgreens Company Guidelines

During the COVID-19 pandemic and until otherwise noted, and in line with CDC guidance to help stop the spread of COVID-19, Walgreens is requiring all team members, customers and patients to wear a face covering while in the store. This playbook offers more information for team members, customers and vendors.

## Executive Orders for Face Covers

The Government Relations team continues to work with local government officials across the country to stay current on executive orders. Your field leadership team will continue to keep you informed on changing orders, and you will continue to receive COMPASS communications with additional direction when applicable. Please continue reaching out to your district manager with any questions you may have around executive orders in your jurisdiction.

# Face Cover Requirements for Team Members

## Requirements, Dress Code and Resources

Per CDC guidance and Walgreens policy, store team members are required to wear face covers while in store to reduce or help prevent the spread of COVID-19. As outlined in the guidance, disposable facemasks will continue to be provided to pharmacy team members for daily use, while front-end team members are provided with a reusable cloth face covering



| | |
|---|---|
| **Basic Requirements** | **Front end team members:**<br>• If a front end team member wishes to wear their own face cover instead of the store provided reusable face covers, they may do so while following the dress code guidance below:<br>  o This may include a homemade or store bought face cover, or a bandana.<br>  o CDC recommends two or more layers and does NOT recommend gaiters<br>  o Per the CDC, masks with exhalation valves or vents should NOT be worn to help prevent the person wearing the mask from spreading COVID-19 to others (source control).<br>**Pharmacy team members:**<br>• Personal face covers are not permitted for pharmacy team members, as store provided disposable masks are required.<br>• All immunizing pharmacy team members should wear a face shield in addition to their face masks while with an immunization patient. |
| **Instructions for Use** | If available, follow specific manufacturer instructions for use, if unavailable, please follow general guidance below:<br>• Face covers must cover your mouth and nose at all times.<br>• To minimize the risk of exposure, avoid touching your face cover or facemask and face.<br>• Remove face cover or facemasks while eating or drinking.<br>• Due to limited availability, face covers elected to be worn outside of work for personal use are to be supplied by the team member.<br>• **Note:** CPC employees (our fleet DC drivers) do not need to wear masks while driving or while in the back of the trailer unloading freight, as long as they are able to practice social distancing by maintaining 6 feet of space from another person |

|  | • Reference the <u>Face Cover Use for Team Members Job Aid</u> for more info |
|---|---|
| **Face cover dress code** | • The standard dress code guidelines should be followed, and can be referenced on Ask Walgreens by searching "Dress Code"<br>• Messaging and symbolism supporting a non-political group are permitted, this includes:<br>  ○ "Lives matter" material (whether it is Black, White, Blue or All)<br>  ○ U.S. or other recognized flags (**excluding** anything with the Confederate flag in it)<br>• Items that are degrading to a group based on any protected category and/or conduct are not permitted<br>• Political markings or designs (e.g. materials identifying political candidates, political campaigns or political slogans of campaigns/candidates) are not permitted<br>  ○ This is a protected characteristic in select states and to ensure a consistent practice nationwide, is not permitted chainwide. Additionally, it improperly sends a message of company support in political matters<br>• Items that symbolize discrimination of a group based on a protected category **are not allowed**:<br>  ○ Swastikas, Confederate flags, etc.<br>• With the complexities of this issue, we want to ensure that you getting accurate information that complies with our HR policies, so we are asking anyone with a specific concern about the appropriateness of the messaging to speak to an ER representative at **800-825-5467** |
| **Cleaning reusable face covers and face shields** | • Wash your cloth face covering frequently, **ideally after each use,** or at least daily. Have a breathable bag or bin to store it until it can be laundered with detergent and hot water and dried on a hot cycle or as instructed on the face covering packaging.<br>• CDC states:  You can include your mask with your regular laundry.<br>• Use regular laundry detergent and the warmest appropriate water setting for the cloth used to make the mask.<br>• Make sure to wash your hands every time you put on and remove the face cover. Discard the cloth face cover if damaged or torn.<br>  ○ Reference the <u>Face Cover Frequently Asked Questions</u> document on StoreNet for additional guidance<br>• Face shields should be hand washed with an alcohol based disinfectant wipe or warm water and a mild soap and air-dried daily.<br>  ○ Reference the <u>Face Shield Use for Team Members Job Aid</u> on StoreNet for additional guidance |
| **Team members who refuse to wear a face cover** | • If a team member refuses or is unable to wear a face cover for reasons unrelated to religion or medical exemption, a member of the store leadership team should reach out to Employee Relations for guidance **800-825-5467** |

# Team Member Face Cover Accommodations

If a team member states that they would like an exception to wear a face shield, please reference the information below. The only team members who don't need an approved accommodation to wear a face shield are immunizing pharmacists and technicians who are following CDC guidance to wear a face shield in addition to a face mask during the administration of an immunization.

| | |
|---|---|
| **Team members seeking accommodation:** | • Approved accommodations are typically related to medical or religious reasons.<br>• If a team member is asking about an alternative for their store provided face masks, please note:<br> ◦ **Front of store team members** can wear company provided reusable face covers or one of their own cloth face covers/face masks (provided it does not contain inappropriate images or logos. See face mask dress code section for additional info).<br> ◦ **Pharmacy team members** must receive accommodation approval to wear their own medical grade masks as disposable facemasks are to be worn in the pharmacy per CDC guidance. They are otherwise required to wear the store provided disposable masks and shields. |
| **Contact information:** | • If a team member requests a **medical accommodation to wear a face shield instead of a face cover** or facemask, they should call Sedgwick at 877-872-0911 through our normal accommodations process that went into effect on January 1, 2020.<br>• If a team member requests a **religious accommodation to wear a face shield instead of a face cover or facemask**, the team member should call Employee Relations at 800-825-5467. |
| **Team member options while awaiting approval:** | • If a team member requests an accommodation and declines to wear a facemask or face covering in a **mandated jurisdiction requiring facemasks or face coverings**, and if there is no temporary accommodation option that allows the team member to continue working while remaining compliant with the facemask/face cover mandate, then the team member cannot continue to work and will need to be out on an unpaid leave while the accommodation case is being reviewed.<br> ◦ The team member will be eligible to take PTO, Frozen Sick Time, or Frozen Vacation.<br> ◦ If there is no PTO or Frozen time available, then the time not worked will be unpaid.<br>• If a team member requests an accommodation and declines to wear a mask or face coverings in a **jurisdiction where there is no mask or face covering mandate**, then the team member can continue working without a facemask or face cover as a temporary accommodation while Sedgwick/ER and the team member's Manager work through the accommodation process.<br> ◦ Reinforce the company's expectations and adherence with CDC guidelines regarding the most effective transmission |

| | prevention actions with the team member, including hand hygiene, proper sneeze/cough etiquette, cleaning of high touch surfaces, and social distancing. |
|---|---|
| | **Note**: Do not apply the Kronos "COVID-19" pay code to pay team members who are waiting on an accommodation approval from Sedgwick or Employee Relations. |
| *Upon receipt of an accommodation approval:* | • Work with your DM to order WIC # 883149 EXP Face Shield ER Accom ONLY. <br> • The item is a J order, as a reminder all items with EXP J in the item description are J-order only item and must be placed by your DM. |

**Additional information:**
- Reference the "Accommodations for Face Covers" section on page X **for additional information on alternative face covers**
- Reference the StoreNet <u>COVID-19 Resources page</u> for all COVID-19 information

# Team Member Provided Face Cover Distribution and Supply

| | |
|---|---|
| *Providing face covering for new hires or Regional Implementation Teams (i.e. GO Teams):* | • Store Managers should provide face covers to new hires and Regional Implementation Teams as they work in their stores. The number of cloth face coverings and disposable masks allocated to each store includes an additional safety stock. <br> • Medical grade store supply face masks may not be opened and sold as individual units, as this poses a risk for contaminating masks. Additionally, each mask would need a mylar and individual price. |
| *How to reorder face covers:* | • Additional ongoing authorized distributions of reusable cloth face coverings for front-end team members and disposable facemasks for Pharmacy team members continue to occur. <br> • If you run out of stock prior to receiving the next distribution, please reach out to your district manager. There may be an opportunity to balance supplies within the district or access additional stock at the local Area office. |

# Face Cover Requirements for Customers

As of July 20, 2020, Walgreens asked customers to wear face covers nationwide while shopping in store. Members of the store leadership team are permitted to provide gentle reminders to customers who have entered the store without wearing a face cover. Additionally, signage about this request should be visible at the front entrance and overhead paging messages routinely remind customers about wearing face covers in the store.

| | |
|---|---|
| **Store leaders** | • **Should not prohibit or physically stop customers without face covers from entering the store.**<br>• **Are not required to approach** customers or patients who are not wearing face covers.<br>• Should keep in mind that some customers may have medical reasons for not wearing a face covering, and should not ask them about this or require them in any way to inform us why they are not wearing a face cover<br>• At this time, we are not providing face covers to customers.<br>• Patients seeking immunizations may be provided a face mask if they were not wearing one. |
| **In the event that conflict arises** | • Store leaders should follow the <u>Handling Confrontational Situations</u> standard operating procedure and de-escalation steps if an individual reacts negatively (verbally or through body language |
| **Video demonstration** | • The video below was developed to walk through how to handle potentially confrontational conversations with customers and patients about wearing face covers |



# Overhead Paging System Messaging

To help increase customer awareness, 1 of the 3 messages below will be played regularly on the In-Store Broadcasting Network (overhead PA paging system):

| | |
|---|---|
| **For locations without state-wide or local jurisdiction customer face cover mandates:** | • Attention Walgreens customers: In accordance with CDC guidelines, Walgreens asks that anyone entering our store, team members and customers included, wear a face cover at all times. We appreciate your cooperation as we work to keep everyone safe. |
| **For locations with state-wide mandates:** | • Attention Walgreens customers: Per state mandates, anyone entering our store, team members and customers included, must wear a face cover at all times. We appreciate your cooperation as we work to keep everyone safe. |
| **For locations with local jurisdiction mandates:** | • Attention Walgreens customers: Per local mandates, anyone entering our store, team members and customers included, must wear a face cover at all times. We appreciate your cooperation as we work to keep everyone safe. |

# Required Signage

In order to support the health and safety of everyone, starting on August 29, all stores should place the new Face Coverings Required sign on the **right** side of the front entrance, facing outside:

| | |
|---|---|
| **Sign Package 1 – arrival August 26** | • SKU: 1396532<br>• **Location:** Front door poster – right<br>• Size: 22" x 28"<br>• Versions: English, bilingual, Spanish<br>• **Directions:** Place poster in the frame on the RIGHT SIDE of the front entrance, facing outside. For bilingual locations, display reverse side.<br>• Display August 29 – until further notice |
| **Image** | |

 

## Right side

Drive-thru     No drive-thru

# Customer FAQ and Talking Points

| | |
|---|---|
| **What should I do if a customer enters my store** | • For your safety, you should **not** prohibit or physically stop customers or patients who are not wearing face covers from entering the store, nor should you attempt to physically remove a customer not wearing face |

| | |
|---|---|
| *without a face cover on?* | covers from the store.<br>• Store leadership is not required to approach customers or patients who are not wearing face covers. Reminder: According to the CDC, cloth face coverings should NOT be worn by children under the age of 2 or anyone who has trouble breathing, is unconscious, incapacitated, or otherwise unable to remove the mask without assistance.<br>• Do not ask someone why he or she is not wearing a mask.<br>• Do not ask if they have a medical condition preventing them from wearing a face cover. |
| *How should a store leader approach a customer without a face cover on?* | • If a member of store leadership chooses to, they may approach the customer or patient from a distance of six feet and gently remind them in a positive, helpful, and non-confrontational tone with the following talking point:<br>    o *"For your safety, I want to remind you that in accordance with CDC guidelines, Walgreens asks that anyone entering our store, team members and customers included, wear a face cover at all times. We appreciate your cooperation as we work to keep everyone safe."* |
| *Can I provide a mask to a customer in need who does not own a mask?* | • We are not providing masks to non-team members at this time (exception, if the patient is receiving an immunization, the pharmacist will provide them with a disposable face mask to wear during the procedure.) |
| *What should I do if customers get into an argument with each other about wearing face covers?* | • Store Leaders should follow the <u>Handling Confrontational Situations</u> SOP found on StoreNet: <u>Policy & Procedures > Front End SOPs.</u><br>• <u>Use de-escalation steps in the standard operation procedure to diffuse the situation.</u><br>• Store Leaders need to continue to follow the social distancing guidelines when following the SOP.<br>• Call law enforcement if the confrontation has the potential to affect your safety or the safety of others.<br>• Remain socially distant at all times- the individual is not wearing a face covering! |
| *How do we avoid approaching a customer multiple times with gentle reminders when there's more than 1 member of leadership on duty?* | • As a best practice, a member of leadership may be designated during a shift to provide reminders to customers. As a reminder, store leadership is not required to approach customers or patients who are not wearing face covers.<br>• For your safety, you should **not** prohibit or physically stop customers or patients who are not wearing face covers from entering the store, nor should you attempt to physically remove a customer not wearing face covers from the store. |
| *How to discreetly remind a customer who doesn't have a face cover on* | • As a best practice, a store leader may wait to approach the customer when others are not nearby. You could use the overhead paging system and offer a reminder on the company's face covering and social distancing requirements.  As a reminder, store leadership is not required to approach customers or patients who are not wearing face covers.<br>• For your safety, you should **not** prohibit or physically stop customers or |

| | |
|---|---|
| *when guidelines are to maintain a 6 feet distance as other customers may be around and may hear the conversation?* | patients who are not wearing face covers from entering the store, nor should you attempt to physically remove a customer not wearing face covers from the store. |
| *What do I do if my city asks that we call law enforcement if a customer or patient is not wearing a face cover?* | • Leadership can call law enforcement if it is required in your jurisdiction. <br> • Call law enforcement if your safety or the safety of others is affected. |
| *What do I do if a TV station or reporter shows up at my store and asks why I haven't been reporting customers?* | • Regardless of the question asked, any time a TV station or media outlet arrives in a store with the cameras rolling, follow the existing media policy. <br>     o Say, "We ask that you direct any questions to our support office, and I'll be glad to provide you with that phone number." <br>     o No matter what they ask, you can use that answer to respond to the cameras without having to answer the questions directly or, even worse, putting your hand over the camera and asking them to stop filming – that's the last thing you'd want to do! <br>     o Media relations team can be reached at (847) 315-2921 and you can click here for view to review our <u>Media Policy</u> |
| *What can a team member say when a customer tells them another customer is not wearing a face cover, and asks the team member to do something about it?* | • *"Can you please discretely let me know where the customer who is not wearing a face cover is located? I will notify my leadership. Thank you for your concern"* <br> • *"We have a sign posted at the door informing customers of the requirement/ask to wear face covers."* <br> • *"We are also playing regular PA announcements informing customers to wear face covers."* <br> • *"Thank you for your consideration in wearing a face cover, my team and I greatly appreciate it. How can I help you today?"* |
| *What can a team member say when a customer tells them another team member is not wearing a face cover, and asks them to do something about it?* | • *"Thank you, I will notify the leadership on duty so they can talk to that team member directly and remind them that face covers must be worn while in the store."* |
| *What can a team* | • Direct them to speak a member of leadership |

| | |
|---|---|
| *member do if law enforcement or other government official comes into my store and asks why I have not been reporting customers?* | • If that is the mandate then leadership should be following this requirement and notifying the designated group. |

# Face Cover Requirements for Vendors

As vendors compete regular deliveries and visits to the stores, they should also wear face covers to help prevent the spread of COVID-19. Store leaders are not required to confront vendors without face covers, but they are permitted to gently remind them to wear a face cover while in store.

| | |
|---|---|
| *Follow the steps below if a vendor arrives at a store without a face cover, facemask, or face shield:* | • A store leader should approach the vendor and gently remind them of the Walgreens requirement for all persons in a store to wear a face cover<br>• If the vendor refuses to wear a face cover, they can continue to complete their job, but Store Managers should report the vendor's name, company, and date of the incident to their District Manager<br>   ○ Note: escalations around WPRE reps can be sent directly from Store Managers to the Implementation Solution Center (ISC) via the quick form link: Issue Resolution Quickform or by phone 1-800-972-0262. If stores have questions about the quick form, please review the ISC FAQs Document for clarity.<br>Distribution Center (warehouse) truck drivers (employed by CPC) should be wearing masks at all times when entering a Walgreens store.<br>   ○ Note: CPC employees do not need to wear masks while driving or while in the back of the trailer unloading freight, as long as they are greater than 6 feet from anyone.<br>• Store leaders should not be providing vendors face masks at this time.<br>• For the safety of our store leaders, do not attempt to prevent vendors from entering the store and completing their job if they refuse to wear a face cover |
| *In the event that conflict arises* | • Store leaders should follow the Handling Confrontational Situations standard operating procedure and de-escalation steps if an individual reacts negatively (verbally or through body language |

| | |
|---|---|
| *without a face cover on?* | covers from the store. |
| | • Store leadership is not required to approach customers or patients who are not wearing face covers. Reminder: According to the CDC, cloth face coverings should NOT be worn by children under the age of 2 or anyone who has trouble breathing, is unconscious, incapacitated, or otherwise unable to remove the mask without assistance. |
| | • Do not ask someone why he or she is not wearing a mask. |
| | • Do not ask if they have a medical condition preventing them from wearing a face cover. |
| *How should a store leader approach a customer without a face cover on?* | • If a member of store leadership chooses to, they may approach the customer or patient from a distance of six feet and gently remind them in a positive, helpful, and non-confrontational tone with the following talking point: ~~Brian Stallworth Area Regional District Manager Gave told the ok to~~ |
| | o *"For your safety, I want to remind you that in accordance with* ~~read aloud~~ ~~when a~~ *CDC guidelines, Walgreens asks that anyone entering our store,* ~~Customer~~ *team members and customers included, wear a face cover at all* ~~enters the~~ *times. We appreciate your cooperation as we work to keep* ~~building w/o~~ *everyone safe."* ~~a face covering~~ ~~Dec. 4th, 2020~~ |
| *Does a local executive order for face covers change how I should approach a customer?* | • If a store belongs to a jurisdiction with an executive order requiring ~~he phoned~~ customers to wear face coverings, then the member of store leadership ~~and state~~ may approach the customer or patient from a distance of six feet and ~~never to~~ gently remind them in a positive, helpful, and non-confrontational tone: ~~Use script~~ |
| | • *"For your safety, I want remind you that the state of XXX/the city of* ~~and forget~~ *XXX/the county of XXX requires that anyone entering our store, team* ~~what he~~ *members and customers included, must wear a face covering at all* ~~told me~~ *times. We appreciate your cooperation as we work to keep everyone* ~~what I do~~ *safe."* ~~could do~~ |
| | • Items that symbolize discrimination of a group based on a protected category **are not allowed**: |
| | o Swastikas, Confederate flags, etc. |
| | • With the complexities of this issue, we want to ensure that you getting accurate information that complies with our HR policies, so we are asking anyone with a specific concern about the appropriateness of the messaging to speak to an ER representative at **800-825-5467** |
| *What if a customer says "no" to wearing a face cover?* | • Allow the customer to continue shopping and end the interaction calmly and walk away – they are not wearing a mask. |
| | • Store Leaders should follow the Handling Confrontational Situations SOP found on StoreNet: Policy & Procedures > Front End SOPs. |
| | • Talking points include: |
| | o *"Thank you for taking the time to listen to our company requirement."* |
| | o *"Thank you, I just wanted to make you aware."* |
| *Are there solutions for a customer who does not have a face cover with them?* | • If a customer indicates that they do not have a face cover, inform the customer that they are available for purchase (if the store is in stock face covers). |
| | • If helpful, inform the customer that for their safety and the safety of others, Walgreens offers services such as drive thru prescription, curbside pickup services, which do not require wearing a face |
| *What should I do if a customer enters my store* | • For your safety, you should **not** prohibit or physically stop patients who are not wearing face covers from entering should you attempt to physically remove a customer not |

~~9~~

| | |
|---|---|
| *without a face cover on?* | covers from the store.<br>• Store leadership is not required to approach customers or patients who are not wearing face covers. Reminder: According to the CDC, cloth face coverings should NOT be worn by children under the age of 2 or anyone who has trouble breathing, is unconscious, incapacitated, or otherwise unable to remove the mask without assistance.<br>• Do not ask someone why he or she is not wearing a mask.<br>• Do not ask if they have a medical condition preventing them from wearing a face cover. |
| *How should a store leader approach a customer without a face cover on?* | • If a member of store leadership chooses to, they may approach the customer or patient from a distance of six feet and gently remind them in a positive, helpful, and non-confrontational tone with the following talking point:<br>     o *"For your safety, I want to remind you that in accordance with CDC guidelines, Walgreens asks that anyone entering our store, team members and customers included, wear a face cover at all times. We appreciate your cooperation as we work to keep everyone safe."* |
| *Can I provide a mask to a customer in need who does not own a mask?* | • We are not providing masks to non-team members at this time (exception, if the patient is receiving an immunization, the pharmacist will provide them with a disposable face mask to wear during the procedure.) |
| *What should I do if customers get into an argument with each other about wearing face covers?* | • Store Leaders should follow the <u>Handling Confrontational Situations</u> SOP found on StoreNet: Policy & Procedures > Front End SOPs.<br>• <u>Use de-escalation steps in the standard operation procedure to diffuse the situation.</u><br>• Store Leaders need to continue to follow the social distancing guidelines when following the SOP.<br>• Call law enforcement if the confrontation has the potential to affect your safety or the safety of others.<br>• Remain socially distant at all times- the individual is not wearing a face covering! |
| *How do we avoid approaching a customer multiple times with gentle reminders when there's more than 1 member of leadership on duty?* | • As a best practice, a member of leadership may be designated during a shift to provide reminders to customers. As a reminder, store leadership is **not** required to approach customers or patients who are not wearing face covers.<br>• For your safety, you should **not** prohibit or physically stop customers or patients who are not wearing face covers from entering the store, nor should you attempt to physically remove a customer not wearing face covers from the store. |
| *How to discreetly remind a customer who doesn't have a ~~fa~~ce cover on* | • As a best practice, a store leader may wait to approach the customer when others are not nearby. You could use the overhead paging system and offer a reminder on the company's face covering and social distancing requirements. As a reminder, store leadership is **not** required to approach customers or patients who are not wearing face covers.<br>• For your safety, you should **not** prohibit or physically stop customers or |

| | |
|---|---|
| *when guidelines are to maintain a 6 feet distance as other customers may be around and may hear the conversation?* | patients who are not wearing face covers from entering the store, nor should you attempt to physically remove a customer not wearing face covers from the store. |
| *What do I do if my city asks that we call law enforcement if a customer or patient is not wearing a face cover?* | • Leadership can call law enforcement if it is required in your jurisdiction.<br>• Call law enforcement if your safety or the safety of others is affected. |
| *What do I do if a TV station or reporter shows up at my store and asks why I haven't been reporting customers?* | • Regardless of the question asked, any time a TV station or media outlet arrives in a store with the cameras rolling, follow the existing media policy.<br>  o Say, "We ask that you direct any questions to our support office, and I'll be glad to provide you with that phone number."<br>  o No matter what they ask, you can use that answer to respond to the cameras without having to answer the questions directly or, even worse, putting your hand over the camera and asking them to stop filming – that's the last thing you'd want to do!<br>  o Media relations team can be reached at (847) 315-2921 and you can click here for view to review our Media Policy |
| *What can a team member say when a customer tells them another customer is not wearing a face cover, and asks the team member to do something about it?* | • "Can you please discretely let me know where the customer who is not wearing a face cover is located? I will notify my leadership. Thank you for your concern"<br>• "We have a sign posted at the door informing customers of the requirement/ask to wear face covers."<br>• "We are also playing regular PA announcements informing customers to wear face covers."<br>• "Thank you for your consideration in wearing a face cover, my team and I greatly appreciate it. How can I help you today?" |
| *What can a team member say when a customer tells them another team member is not wearing a face cover, and asks them to do something about it?* | • "Thank you, I will notify the leadership on duty so they can talk to that team member directly and remind them that face covers must be worn while in the store." |
| *What can a team* | • Direct them to speak a member of leadership |

| | |
|---|---|
| ***member do if law enforcement or other government official comes into my store and asks why I have not been reporting customers?*** | • If that is the mandate then leadership should be following this requirement and notifying the designated group. |

# Face Cover Requirements for Vendors

As vendors compete regular deliveries and visits to the stores, they should also wear face covers to help prevent the spread of COVID-19. Store leaders are not required to confront vendors without face covers, but they are permitted to gently remind them to wear a face cover while in store.

| | |
|---|---|
| ***Follow the steps below if a vendor arrives at a store without a face cover, facemask, or face shield:*** | • A store leader should approach the vendor and gently remind them of the Walgreens requirement for all persons in a store to wear a face cover<br>• If the vendor refuses to wear a face cover, they can continue to complete their job, but Store Managers should report the vendor's name, company, and date of the incident to their District Manager<br>  o Note: escalations around WPRE reps can be sent directly from Store Managers to the Implementation Solution Center (ISC) via the quick form link: Issue Resolution Quickform or by phone 1-800-972-0262. If stores have questions about the quick form, please review the ISC FAQs Document for clarity.<br>Distribution Center (warehouse) truck drivers (employed by CPC) should be wearing masks at all times when entering a Walgreens store.<br>  o Note: CPC employees do not need to wear masks while driving or while in the back of the trailer unloading freight, as long as they are greater than 6 feet from anyone.<br>• Store leaders should not be providing vendors face masks at this time.<br>• For the safety of our store leaders, do not attempt to prevent vendors from entering the store and completing their job if they refuse to wear a face cover |
| ***In the event that conflict arises*** | • Store leaders should follow the Handling Confrontational Situations standard operating procedure and de-escalation steps if an individual reacts negatively (verbally or through body language |